RICHARD A. ENGERT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Engert v. Commissioner
Docket No. 40468-84.
United States Tax Court
T.C. Memo 1986-199; 1986 Tax Ct. Memo LEXIS 407; 51 T.C.M. (CCH) 1022; T.C.M. (RIA) 86199; May 19, 1986. Richard A. Engert, pro se. Frank Laurino, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined deficiencies in petitioner's Federal income tax liabilities and additions to tax, as follows: Additions to Tax, I.R.C. 1954
Year
Deficiency
[1] § 6651(a)(1) § 6653(a)(1)
[2] § 6653(a)(2) 1981
$6,869.00
$814.00
$343.00
50% of the interest
due on $3,256.22
1982
6,508.00
325.00
50% of the interest
due on $2,650.40
*409 The respondent also requested the imposition of damages under section 6673 in an amount not to exceed $5,000 for commencing and maintaining a frivolous and groundless suit. The issues presented are: (1) Whether a "vow of poverty" signed by petitioner October 20, 1981 was effective to reduce his taxable income for that year. (2) Whether petitioner is liable for an addition to tax for failure to file an income tax return for 1981. (3) Whether petitioner is entitled to deduct charitable contributions in the amounts of $21,726.29 for 1981 and $22,313.49 for 1982. (4) Whether petitioner is liable for additions to tax under section 6653(a)(1) and (2) for negligence or intentional disregard of rules and regulations for 1981 and 1982. (5) Whether petitioner is liable for damages under section 6673. Some of the facts have been stipulated and they are so found. When he filed his petition, petitioner resided in Brooklyn, N.Y. During the years in issue he was employed by the New York City Transit Authority as a line supervisor for cars and ships. He was paid wages for his services in the amount of $28,575.20 in 1981 and $29,297.13 in 1982. For convenience, our remaining findings *410 of fact and opinion are combined below. 1981 "Vow of Poverty"[3]
On September 1, 1981 petitioner founded "The Church of Modern Enlightenment," which maintains its office at 484-67th Street, Brooklyn, N.Y., a rented apartment where petitioner resides. On September 16, 1981, petitioner opened a bank account in the name of the "church" (church account) at Manufacturers Hanover Trust. Three church "trustees," petitioner, Phyllis A. Engert, and Sanford I. Kleinman, each had signatory authority over the account. Any one of the three was authorized to write checks. Phyllis A. Engert is petitioner's sister. Sanford I. Kleinman is petitioner's co-worker at the transit authority, and the "minister" of a church similar to petitioner's. (See discussion under "Damages," below.) Petitioner's church had six members: the three trustees and three members of Kleinman's family. On October 20, 1981, [4] petitioner signed a vow of poverty, witnessed by the trustees. Petitioner purported to irrevocably *411 give all his possessions to the church, whether or not they continued to appear in his personal name. The vow further stated, "Secular employment remuneration (when directed by the Church) is not personal remuneration, but a donation to the Church or Order and not belonging to the individual or the undersigned." Petitioner's wages were paid to him during the taxable years 1981 and 1982 for services performed for the New York City Transit Authority in his individual capacity. Petitioner's position did not involve any religious duties. The transit authority had no contract or other agreement with any church or religious organization regarding petitioner's services, and the wages were paid directly to petitioner with no restrictions on their use. It is a truism in tax law that income is taxed to the one who earns it. . See also ; . Regardless *412 of vows of poverty, when secular services are rendered by an individual, income received by him in his individual capacity and not on behalf of a separate and distinct principal is taxable to the individual. , affg. a Memorandum Opinion of this Court; , affd. without published opinion ; . Accordingly, we find that the wages paid to petitioner are taxable to him. Failure to File
Respondent maintains that the Form 1040 submitted by petitioner for the taxable year 1981 was not a return within the meaning of sections 6011(a) and 6651(a)(1). Section 6651(a)(1) provides for an addition to tax if a taxpayer fails to file a timely return unless such failure is due to reasonable cause and not due to willful neglect. The general requirements of a Federal income tax return are set forth in section 6011(a), which provides in relevant part as follows: When required by regulations prescribed by the Secretary any person made liable for any tax * * * shall *413 make a return or statement according to the forms and regulations prescribed by the Secretary. * * * [Emphasis added.] Here, petitioner filed a blank return, except for his name, address, social security number, filing status, and request for refund of amounts withheld. He signed the return, and attached a copy of his W-2 Form from the New York City Transit Authority. The W-2 showed amounts of wages and withholdings for Federal income tax, FICA tax, and state and local income taxes. Petitioner also attached a typed form in which his name was filled in. The form read, in its entirety: Reverend Richard Engert is a member of a Religious Order who has taken an irrevocable Vow of Poverty and performs services pursuant to direction by the Order as an agent. The income generated is the property of the Church and Order and not personal income to the individual. For confirmation or clarification, you may write to: Worldwide Religious Order of Almighty God, Section T1, 4395 Austin Boulevard, Island Park, New York 11558 [5]
*414 A document constitutes a valid tax return if "it contains sufficient data from which respondent can compute and assess a tax liability." , and cases cited therein. Accord, . The U.S. Supreme Court in the case of , stated: Congress has given discretion to the Commissioner to prescribe by regulation forms of returns and has made it the duty of the taxpayer to comply. It thus implements the system of self-assessment which is so largely the basis of our American scheme of income taxation. The purpose is not alone to get tax information in some form but also to get it with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished. * * * [; emphasis added.] The Supreme Court test has several elements: (1) There must be sufficient data to calculate tax liabilities; (2) the document must purport to be a return; (3) there must be an honest and reasonable attempt to satisfy the requirements *415 of the tax law; and, (4) the taxpayer must execute the return under penalties of perjury. , on appeal (6th Cir., Sept. 24, 1984), and cases cited therein. Since petitioner denies that the wages reflected on the W-2 form are his income, and since he did not fill in the Form 1040 as required, he has failed to meet the second and third prongs of the above test. Moreover, the attachment of a Form W-2 does not substitute for the disclosure on the return itself of information as to income, deductions, credits, and tax liability, and hence the first prong of the above test is not satisfied. ; . In fact, the document effectively disguises the Form W-2 information by disclaiming any tax liability whatsoever. See . As we said in , the acceptance of documents like petitioner's as a return within the meaning of the Internal Revenue Code would disrupt the administration of the tax laws and serve *416 to undermine the integrity of our self-assessment tax system. We hold that petitioner's document does not constitute a return within the meaning of sections 6011(a) and 6651(a)(1). We further hold that petitioner has not borne his burden of proving that his failure to file a return is due to reasonable cause and not due to willful neglect. Rule 142(a); ; . Even a good faith belief that one is not required to file a return does not constitute cause under section 6651(a)(1) unless bolstered by the timely-sought advice of a competent tax adviser who has been fully informed of all relevant facts. , affd. in part and revd. in part . [6] Petitioner offered no such evidence. Respondent's determination of an addition to tax under section 6651(a)(1) is upheld. Charitable Contributions, 1981-1982
Petitioner reported *417 his wages of $29,297.13 as income in 1982, but deducted $29,101.13 as a charitable contribution. [7] At trial he argued he was also entitled to a charitable contribution deduction in the full amount of his net pay for 1981, in the event the Court should not accept his attempted assignment of income to the Church of Modern Enlightenment for 1981. At trial, petitioner presented a revised method of calculating his deduction for charitable contributions. As to 1981, petitioner testified he received gross wages of $28,575. After subtracting Federal, state, local, and FICA taxes withheld (as shown on the W-2 Form attached to his return), he received net wages of $21,726.29. After September 16, 1981, when the church checking account was opened, petitioner received net wages of $8,603.50, which he deposited in the church checking account and which he now claims as a donation. He also *418 claims a deduction for the net wages of $13,122.79 he received from January 1 to September 15, 1981 on the theory that it equals or exceeds the value of possessions donated to the church through his vow of poverty. Petitioner presented no evidence of the possessions donated nor of their value. For 1982, petitioner now claims the appropriate deduction should be $22,313.49, which was, again, net wages received. Petitioner lives in the same apartment where he resided before the purported gift to the church. He uses the same furniture and possessions he previously used. He testified his personal expenses are met with a $600 per month "parsonage allowance" for food, rent, utilities, and other personal expenses, an amount which can be increased by permission of the trustees. While this would only total $7,200 per year, petitioner testified the remainder of his net wages were deposited in a Dreyfus account for a "church building fund" in 1982. Petitioner and Kleinman had signature authority over that fund, which petitioner testified contained $17,000 in 1982. [8] Petitioner was the sole contributer to the church during the years in issue. *419 Deductions are a matter of legislative grace and the taxpayers must satisfy the specific statutory requirements for the deductions that they claim. . Taxpayers bear the burden of proving their entitlement to those deductions. ; Rule 142(a). To secure a deduction for a charitable contribution under section 170(c), petitioner must establish that he has made an unconditional gift to a qualified entity. See , affg. a Memorandum Opinion of this Court; , affg. . Qualified entities under section 170 include most organizations that qualify for an exemption from tax under section 501(c)(3). Such organizations must be organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international sports competition, or for the prevention of cruelty to children or animals, and no part of the net earnings of the organization *420 may inure to the benefit of any private individual. See 170(c)(2)(B) and (C). Petitioner has not shown that he made an unconditional gift to a qualified entity in either of the years in issue. Further, the evidence shows that the earnings inured to petitioner's private benefit. Petitioner continued to reside at his apartment and to use his possessions as he always had. While he shared signatory authority over the church bank account with others, he could and did withdraw funds on his sole signature. The other trustees were a close relative and a co-worker with whom petitioner shared a reciprocal "church trustee" type arrangement. Cancelled checks from the church banking account received in evidence are uniformly for personal expenses such as rent, electric bills, gas, charge accounts, and other personal or living expenses. Many checks are made payable to petitioner himself. [9]
*421 On this record, we sustain respondent in the denial of petitioner's charitable deductions for 1981 and 1982. Negligence
Petitioner offered no evidence to overcome the presumption of correctness of respondent's determination that he is liable for the additions to tax under section 6653(a). See ; . We therefore sustain respondent's determination of the additions to tax under section 6653(a)(1). We also sustain respondent's determination under section 6653(a)(2). Damages
The final question is whether damages under section 6673 should be awarded to the government. That section provides that when it appears to the Court that proceedings before it have been instituted or maintained by a taxpayer primarily for delay, or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States. Petitioner argues that he should not be liable for damages because he cooperated fully with the government by producing all subpoenaed documents and answering all questions *422 asked of him. We have noted above petitioner's close relationship with Sanford I. Kleinman. On cross-examination, petitioner acknowledged that he testified in Kleinman's case in this Court, and was present when the Court ruled in favor of respondent on the charitable contribution issue. [10] He further acknowledged that Kleinman's "Good Friendship Temple" is very similar to the "Church of Modern Enlightenment." Petitioner said, "Our ministries coincide, yes." Petitioner, therefore, clearly knew by the time his own case came to trial that his position on that issue was without merit. We find that petitioner maintained these proceedings primarily for purposes of delay. His positions on the vow of poverty and charitable contribution issues were frivolous and groundless. We recognize that petitioner raised a legitimate issue at trial regarding the computation of the section 6653(a)(2) additions to tax, which caused respondent to modify his original determination as to that issue. However, petitioner could have raised this question with respondent earlier, and avoided a trial on *423 the substantive issues of this case, which were frivolous. On the basis of this record, we conclude that petitioner's position in these proceedings was frivolous and groundless, and that he maintained this suit primarily for delay.Taking all of the factors noted above into account, damages will be awarded to the United States in the amount of $250. Accordingly, to reflect our holdings, An appropriate order and decision will be entered.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. In his notice of deficiency, respondent determined additions to tax under sec. 6653(a)(2) based on $6,869 and $6,508. After a question raised by petitioner at trial, respondent conceded that the proper amounts should be as shown above.↩
3. Terms first appearing in quotation marks are used for convenience only. As will become evident below, we do not intend a finding that they are in substance what they purport to be.↩
4. Petitioner contends he is entitled to a charitable deduction for the portion of 1981 not covered by the vow of poverty. The charitable deduction issue is addressed below.↩
5. We note that the vow of poverty dated October 20, 1981 and entered into evidence by petitioner designates the Church of Modern Enlightenment and the Order of the Circle of Golden Light to receive petitioner's donation and possessions, not the Worldwide Religious Order of Alminghty God.↩
6. See also and cases cited therein.↩
7. Petitioner also deducted union dues of $196.Since this amount did not exceed petitioner's zero bracket amount of $2,300, respondent increased his taxable income $196 to eliminate the itemized deduction, and computed petitioner's tax using the tax table which includes the zero bracket amount of $2,300.↩
8. Petitioner is also a trustee and member of Kleinman's church and shares signature authority over that church bank account as well as his own.↩
9. Petitioner explained that the telephone, gas, and electric companies refused to put the accounts in the church's name and denied petitioner's request for a clergyman's discount. He testified this was because he had secular income. We think they accurately saw through petitioner's scheme.↩
10. Kleinman v. Commissioner,↩ docket. No. 16632-84 (unpublished bench opinion Oct. 2, 1985).